UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANETTE C. HUSSEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:17-CV-2507-SPM |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security Administration (the "Commissioner") denying the application of Plaintiff Lanette C. Hussey ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I. PROCEDURAL BACKGROUND

In July 2013, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since January 1, 1993, due to bipolar disorder, anxiety disorder, depression, and post-traumatic stress disorder. (Tr. 226, 230, 262). She later amended her onset date to December 31, 2007. (Tr.

1

228). Her application was initially denied. (Tr. 153, 157). On February 10, 2014, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 162). On August 12, 2015, the ALJ held a hearing on Plaintiff's claim. (Tr. 96-128). On May 25, 2016, the ALJ issued an unfavorable decision. (Tr. 61-84). On August 7, 2017, the Appeals Council declined to review the ALJ's decision. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

At the hearing before the ALJ in August 2015, Plaintiff testified that she last worked in 2007, and she was dismissed from that job because she had a hard time focusing on her duties and because she was going through depression and bipolar episodes that caused her not to show up to work. (Tr. 103). She also testified that anxiety affects her ability to do things, because she finds everything overwhelming. (Tr. 105). She testified that she does not do chores, cook, or grocery shop, and that she mostly watches television and sleeps. (Tr. 107). She had a bad fall in 2013, from which she has pain in her shoulders and hips and problems lifting and walking. (Tr. 108-10). In May 2014, she had a stroke. (Tr. 112). Since then, she has had problems including a lack of coordination, difficulty writing, difficulty dialing numbers on a phone, and memory issues. (Tr. 113-16). She can read. (Tr. 115). She also has a history of drug abuse and alcohol abuse. (Tr. 116).

With respect to the medical and vocational records, the Court accepts the facts as presented in the parties' statements of facts. The Court will cite to specific records as necessary in the analysis below.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health*

*& Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant

disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.960(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since December 31, 2007, the alleged onset date; that

Plaintiff had the severe impairments of status post right, middle cerebral artery infarction secondary to heroin and cocaine in May 2014; status post multiple rib fractures, a pelvic fracture, and a splenic injury in August 2013; a history of bipolar disorder, mainly depression and anxiety; and substance abuse disorder. (Tr. 66). He found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 67-69). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.067(b) that includes being to sitting [sic] for eight hours in an eight-hour workday; walking for three hours in an eight-hour workday; standing for four hours in an eight-hour workday; the frequent use [of] her right foot for foot control operations and the occasional use of her left foot for foot control operations; no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, and crawling; occasional use of the left arm/hand (her dominant hand) for reaching, handling, and fine finger manipulation; avoiding all exposure to the operational control of moving machinery and unprotected heights; simple, routine, repetitive tasks in an environment free of fast-paced production requirements; and work involving only simple work-related decision with few, if any, work place changes.

(Tr. 69). At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a general inspector. (Tr. 76). However, at Step Five, relying on evidence obtained from a vocational expert, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as (1) school bus monitor (*Dictionary of Occupational Titles* ("*DOT*") No. 372.667-042), 16,000 jobs nationally; (2) counter clerk (*DOT* No. 249.366-010), 18,000 jobs nationally; and (3) office clerk (*DOT* No. 205.367-030), 38,500 jobs nationally. (Tr. 76-77)

V. DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred in analyzing whether Plaintiff's intellectual impairment met or equaled Listing 12.05(C); and (2) that the ALJ

5

erred in failing to elicit evidence that there were jobs Plaintiff could perform existing in significant numbers in either the region where Plaintiff lives or in several regions of the country.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Analysis of Listing 12.05(C)

Plaintiff's first argument is that the ALJ erred in analyzing whether her intellectual impairment met or equaled Listing 12.05(C). The Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings") "describes for each of the major body systems impairments

that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). [1] "The claimant has the burden of proving that his [or her] impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). "An impairment that manifests only some of these criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An impairment is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). As Plaintiff notes, the regulations state that if a claimant has an impairment described in the Listings but one or more of the findings specified is lacking or is not as severe as specified, the Commissioner "will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. §§ 404.1526(b)(1), 416.926(b)(1). To establish that an impairment equals a listed impairment, "a claimant 'must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Carlson*, 604 F.3d at 594 (quoting *Sullivan*, 493 U.S. at 531).

At the time of the ALJ's decision, Listing 12.05 read, in relevant part:[2]

---

[1] Several Social Security regulations have been revised, effective March 27, 2017. Throughout this decision, the Court will be applying the version of the regulations that was in effect both at the time of Plaintiff's 2013 application and the ALJ's 2016 decision.

[2] Effective January 17, 2017, Listing 12.05 was amended. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 43048, 2016 WL 5341732 (Sept. 26, 2016). The Court applies the version of Listing 12.05 that applied at the time of the ALJ's decision. *See id.* at n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.")

7

> **12.05 Intellectual Disability:** Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05. The Eighth Circuit has held that "the requirements in the introductory paragraph are mandatory." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). Thus, "[t]o meet the requirements of Listing 12.05, a claimant must demonstrate that she suffers from deficits in adaptive functioning that initially manifested during the developmental period." *Ash v. Colvin,* 812 F.3d 686, 690 (8th Cir. 2016) (citing *Maresh*, 438 F.3d at 899).

In his decision, the ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listing impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 67). Addressing Listing 12.05, the ALJ stated:

> The record shows that [Plaintiff] had valid IQ scores of under 70 during her psychological consultative examination (Exhibit 35F). However, the undersigned finds that she does not meet the requirements for listing 12.05 because the record fails to show deficits of adaptive functioning prior to age 22.

(Tr. 67). The ALJ also discussed Listing 1.06, Listing 1.07, Listing 11.04, Listing 12.02, Listing 12.04, and Listing 12.06, and found that Plaintiff's impairments, considered singly and in combination, did not meet or medically equal the criteria of those listings. (Tr. 67).

Plaintiff does not challenge the ALJ's finding that Plaintiff did not meet the requirements of Listing 12.05, nor does Plaintiff appear to challenge the ALJ's finding that Plaintiff failed to show deficits in adaptive functioning prior to age 22. Instead, Plaintiff appears to challenge the

ALJ's implicit determination that Plaintiff's impairments did not *equal* Listing 12.05. Plaintiff states, "[t]he question never was whether [Plaintiff] *met* listing 12.05(C), but rather whether her cognitive disorder *equaled* the listing." Pl's. Br., at 3. Plaintiff also argues that the question of whether Plaintiff "showed adaptive deficits as a child . . . was relevant only to analysis of whether [Plaintiff's] condition *met* listing 12.05(C)." *Id.* Plaintiff argues that the relevant inquiry, not addressed by the ALJ, is whether Plaintiff equaled Listing 12.05(C) a result of a combination of her low IQ and the further reduction in cognitive ability caused by her 2014 stroke. Plaintiff points out that at the hearing, the ALJ acknowledged the possibility that Plaintiff might have "some cognitive residuals" due to her stroke, and he ordered a consultative examination. (Tr. 126-27). Plaintiff argues that the ALJ should have further developed the record regarding whether her intellectual impairment equaled Listing 12.05(C).

As Plaintiff points out, the Eighth Circuit has held that evidence of low IQ scores may, in some cases, require an ALJ to conduct an explicit analysis of whether the claimant's impairment is medically equivalent to a listing. In *Hesseltine v. Colvin*, 800 F.3d 461 (8th Cir. 2015), the Eighth Circuit noted that a finding that a claimant does not meet Listing 12.05(C) "does not end inquiry." *Id.* at 465 (quoting *Shontos v. Barnhart*, 238 F.3d 418, 428 (8th Cir. 2003)). The Eighth Circuit further noted that "[i]nstructions for determining whether a person's combination of impairments is medically equal to a given listing are outlined in the Program Operations Manual System (POMS)." *Id.* at 465. The court recognized that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Id.* (quoting *Shontos*, 328 F.3d at 424). As the Eighth Circuit pointed out in *Hesseltine*, the applicable POMS guideline for Listing 12.05(C) provides:

> D. Determining Medical Equivalence in Particular Situations
>     1. Medical Equivalence and Mental Retardation.

> Listing 12.05, Mental Retardation applies primarily to adults with significantly subaverage intellectual functioning and deficits in adaptive behavior that were initially manifested in the individual's developmental period (before age 22). As with other mental impairment categories, the focus of Listing 12.05 is on the individual's inability to perform and sustain critical mental activities of work.
> . . .
> c. 12.05 C
>
> Listing 12.05 C is based on a combination of an IQ score with an additional and significant mental or physical impairment. **The criteria for this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an equivalence determination.** It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056 (emphasis added). In *Hesseltine*, the Eighth Circuit made it clear that an ALJ's failure to address medical equivalence under these POMS guidelines may constitute reversible error. *See Hesseltine*, 800 F.3d at 465 (reversing based on ALJ's failure to address medical equivalence under the POMS guidelines where the claimant had IQ scores "within the 70-75 range that would render her eligible for an equivalency finding under the POMS guidelines for Listing 12.05C" and there was evidence supporting the other criteria of Listing 12.05(C)).

Unlike *Hesseltine*, the instant case does not involve the situation identified by POMS § DI 24515.056 as one of the "very rare" situations in which an equivalence determination would be required for Listing 12.05(C): the presence of "slightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function." In this case, Plaintiff had IQ scores *within* the Listing range (Tr. 1195), and Plaintiff's IQ scores were not the basis on which the ALJ found Listing 12.05(C) was not satisfied. Rather,

the ALJ found Listing 12.05(C) was not satisfied based on a different reason: his conclusion that Plaintiff did not have deficits in adaptive functioning before age 22. (Tr. 67). Thus, neither *Hesseltine* nor POMS § DI 24515.056 supports Plaintiff's argument in this case. *See Sutherlin v. Berryhill*, No. 0:16-CV-02647-DWF-KMM-2018 WL 2180262, at *10 (D. Minn. Jan. 12, 2018) (finding that POMS § DI 24515.056 did not "say anything about medical equivalence when an ALJ finds that the claimant fails to meet or medically equal criteria in Listing 12.05C other than the IQ component"), *report and recommendation adopted*, 2018 WL 1512058 (Mar. 27, 2018).

Plaintiff cites no authority to support her suggestion that an impairment or combination of impairments may be equal to Listing 12.05(C) in the absence of deficits in adaptive functioning before age 22, nor has the Court found any. To the contrary, the Court's research reveals that a finding of deficits in adaptive functioning before age 22 is required for a finding that an impairment or combination of impairments equals Listing 12.05(C). The POMS guidelines provide, "To determine that . . . a mental impairment does not meet but equals a listed impairment, it must first be shown that the capsule definition of that impairment is satisfied." POMS § DI 24515.056. Similarly, "[t]o determine that multiple impairments are medically equivalent to a listed impairment, it must first be determined that the individual impairments fall within the parameters of an appropriate listed impairment." *Id.* The "capsule definition" of Listing 12.05 is the introductory paragraph of Listing 12.05, which states that "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05; POMS § DI 24515.056 ("The capsule definition follows the diagnostic category, e.g., Organic Mental Disorders, and describes the essential features of the impairment.")); *McDonald v. Colvin*, No.

4:12CV1313SNLJ, 2013 WL 5406612, at *11 (E.D. Mo. Sept. 25, 2013) ("The capsule definition of Listing 12.05 requires adaptive functioning deficits . . . .").

Numerous courts within the Eighth Circuit and elsewhere, often relying on this POMS guideline, have upheld findings that a claimant's impairment or combination of impairments was not equal to Listing 12.05 where the claimant failed to show subaverage intellectual functioning or adaptive deficits prior to the age of 22. *See Crane v. Astrue*, 369 F. App'x 915, 921 (10th Cir. 2010) (finding no error in ALJ's failure to discuss whether the claimant's impairments were equivalent to Listing 12.05, because "[t]here was no evidence that [the claimant] met the capsule definition for Listing 12.05, which requires evidence that a claimant exhibit subaverage general intellectual functioning before the age of twenty-two") (citing POMS § DI 24515.056; quotation marks omitted); *Bernal v. Berryhill*, No. CV 16-1365 JAP/GBW, 2018 WL 2441154, at *3 (D.N.M. May 31, 2018) (finding only harmless error where the ALJ did not address medical equivalence under Listing 12.05(C) in a case where the plaintiff had some intellectual impairment prior to age 22 and had a head injury after age 22 that could have exacerbated his intellectual impairment; stating, "[a] condition precedent to the equivalence examination is the capsule requirement—an intellectual disability prior to the age of 22" and finding that "[b]ecause the ALJ found that Plaintiff did not establish the capsule criteria, any error the ALJ made in not determining whether Plaintiff's disability was the equivalent of subparagraph C was harmless"); *Sutherlin*, 2018 WL 2180262, at *10 (rejecting the plaintiff's argument that reversal was required because ALJ failed to adequately consider whether the claimant's combination of impairments was medically equivalent to Listing 12.05(C), because the ALJ found that the plaintiff "failed to show the required deficits in adaptive functioning"), *report and recommendation adopted*, 2018 WL 1512058; *Howell v. Colvin*, No. 1:15-CV20-NCC, 2016 WL 492710, at *10 (E.D. Mo. Feb. 9,

2016) (rejecting the claimant's argument that the ALJ erred by not finding an impairment medically equivalent to Listing 12.05(C); reasoning that the capsule definition of a listed impairment must be satisfied before an impairment may be found to be medically equivalent to the impairment, that the capsule definition of Listing 12.05(C) requires subaverage intellectual functioning and adaptive functioning deficits manifested before age twenty-two, and that substantial evidence supported the ALJ's finding that the claimant did not suffer deficits in adaptive functioning before age 22) (citing POMS § DI 24515.056); *McDonald v. Colvin*, No. 4:12-CV-1313-SNLJ, 2013 WL 5406612, at *11 (E.D. Mo. Sept. 25, 2013) ("[T]he capsule definition of Listing 12.05 requires adaptive functioning deficits, and substantial evidence supports that plaintiff did not suffer adaptive functioning deficits. Accordingly, substantial evidence also supports finding that plaintiff did not medically equal Listing 12.05.") (citing POMS § DI 24515.056).

Here, as in the above cases, the ALJ found that Plaintiff did not meet Listing 12.05 because the record did not show deficits in adaptive functioning prior to age 22. Plaintiff does not appear to challenge that finding, and the Court's review of the record shows that it is supported by substantial evidence. The regulations do not define the phrase "deficits in adaptive functioning" and do not further explain what is required to show that the introductory paragraph of Listing 12.05 is satisfied. However, the Eighth Circuit has found several factors to be relevant, including whether a claimant was able to complete high school; whether a claimant has difficulties in reading and writing; whether a claimant needed special education services; whether a claimant has exhibited behavioral problems; how well a claimant is able to communicate; whether a claimant has been able to perform work (especially skilled or semi-skilled work); and whether a claimant has been able to perform activities of daily living independently. *See, e.g.*, *Scott v. Berryhill,* 855 F.3d 853,

856-57 (8th Cir. 2017) (discussing special education classes, failure to complete high school, history of unskilled and semi-skilled work, reading ability, communication ability, and ability to perform daily activities); *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (discussing special education classes, failure to complete high school, and violent altercations); *Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007) (discussing "low-grade dropout" and participation in prior special education classes); *Maresh v. Barnhart*, 438 F.3d 897, 899-900 (8th Cir. 2006) (discussing frequent fights with other children, struggling in special education classes, and dropping out of school in the ninth grade).

Plaintiff, who bears the burden of showing that she meets or equals a Listing, has not produced any evidence (such as school records or IQ tests pre-dating her stroke) that would show an onset of her intellectual impairment or deficits in adaptive functioning prior to age 22. Plaintiff reported that she has a G.E.D., she was not in special education classes, she has completed a microcomputer/data entry certificate program, and she has completed a year of college. (Tr. 263, 296). She has worked in the past as an office clerk, an administrative assistant, and an inspector. (Tr. 270). The vocational expert characterized her past work as an inspector as "semi-skilled." (Tr. 345). In her 2013 Function Report, she reported living on her own, preparing her own meals, performing household chores, driving a car, going out alone, shopping in stores, and being able to pay bills, handle a savings account, count change, and use a checkbook; she also reported that one of her hobbies is reading and said she was "pretty good" at it. (Tr. 282-86). Although the medical records dated prior to her 2014 stroke show that Plaintiff had mood issues and substance abuse issues, those records do not show any significant references to cognition, thought, or memory problems.

Because the ALJ's finding that Plaintiff did not have deficits in adaptive functioning prior to age 22 was supported by substantial evidence, Plaintiff did not satisfy the capsule definition of Listing 12.05, and therefore her intellectual impairment did not meet or equal Listing 12.05(C). Thus, any error by the ALJ in failing to address medical equivalence with respect to Listing 12.05(C) was harmless. *See Howell v. Colvin*, 2016 WL 492710, at *10; *McDonald v. Colvin*, No. 4:12-CV-1313-SNLJ, at *11.

### C. The ALJ's Step Five Finding

Plaintiff's next argument is that the ALJ's Step Five finding was not supported by substantial evidence because the ALJ did not elicit sufficient vocational expert testimony. Specifically, Plaintiff argues that the ALJ erred by finding that she could perform work existing in the national economy based solely on the vocational expert's evidence of nationwide job numbers, without obtaining any evidence that the jobs the expert identified existed either "in the region where [Plaintiff] lives" or "in several regions of the country," as is required by the Act.

The Social Security Act states:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), **"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.**

42 U.S.C. § 423(d)(2)(A) (emphasis added). *Accord* § 1382c(a)(3)(B). The relevant regulations further provide:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs

that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy."

20 C.F.R. §§ 404.1566, 416.966. The burden of showing the existence of work that exists in the national economy at Step Five of the sequential process is on the Commissioner *See* 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Moore*, 572 F.3d at 523.

Here, the ALJ sent a questionnaire to a vocational expert, describing a hypothetical individual of Plaintiff's age, education level, work experience, and RFC, and asked whether such an individual could "perform any unskilled occupations with jobs that exist in the national economy," and the vocational expert responded, "Yes." (Tr. 347). The questionnaire asked the vocational expert to provide "the number of jobs that exist in the national economy for each unskilled occupation that the individual could perform." (Tr. 347). The vocational expert responded with three jobs: (1) school bus monitor (*DOT* No. 372.667-042), 16,000 jobs; (2) counter clerk (*DOT* No. 249.366-010), 18,000 jobs; and (3) office clerk (*DOT* No. 205.367-030), 38,500 jobs. (Tr. 347). The vocational expert also stated that there were no conflicts between the occupational evidence he provided and the occupational information in the *DOT* or the *SCO [Selected Characteristics of Occupations]*. (Tr. 347-48). Plaintiff was notified that the ALJ had obtained this evidence and was given the opportunity to comment on it or submit written questions to the vocational expert, but there is no evidence to suggest that Plaintiff did so. (Tr. 217). Relying on the vocational expert's responses, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform. (Tr. 76-77).

Plaintiff argues that the vocational evidence obtained by the ALJ was insufficient, because the vocational expert offered evidence only of jobs existing in the national economy and did not

address how many of the identified jobs existed either in Missouri or in several regions of the country.

Neither party directs the Court to any cases addressing the issue of whether a vocational expert's statement of the number jobs existing "in the national economy" is sufficient to satisfy the requirement of showing "work which exists in significant numbers . . . in several regions of the country." *See* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Court's own research has not revealed any Eighth Circuit cases addressing the issue, and other courts addressing the issue have reached different conclusions. Some courts have found that evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that evidence of 25,000 jobs nationwide satisfied the requirement of showing "work which exists in significant numbers . . . in several regions of the country; reasoning that "[a] finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers,'" and therefore "the ALJ's national job finding satisfies § 1382c(a)(3)(B), because it represents a significant number of jobs in several regions of the country.") (citing 20 C.F.R. § 416.966(b)); *John D.C. v. Comm'r of Soc. Sec.*, No. 17-CV-1116-CJP, 2018 WL 6018859, at *4-*5 (S.D. Ill. Nov. 16, 2018) (rejecting the argument that the ALJ erred by relying on testimony from the vocational expert that contained only national and not regional job numbers; stating, "Plaintiff does not argue the jobs the VE identified exist only in isolation or in concentrated regions. Any such argument would be frivolous. The jobs identified by the VE (cleaner, kitchen helper, and laundry worker) are not regional."); *Nelson v. Colvin*, No. C12-5540 RJB, 2014 WL 372496, at *3-4 (W.D. Wash. Feb. 3, 2014) (holding that

vocational expert testimony that there were 22,000 jobs nationally was sufficient to satisfy the Commissioner's burden at Step Five; stating, "plaintiff cites no cases stating that, in this context, the term 'several regions of the country' is not substantially the same as "nationwide," and the undersigned is not aware of any"); *Vining v. Astrue*, 720 F. Supp. 2d 126, 138 (D. Me. 2010) (noting that "courts have overlooked an absence of testimony that jobs do exist in several regions of the country when a reasonable mind could conclude that they do" and finding no error in Commissioner's reliance on nationwide job figures where "[n]othing in [the *DOT*] description indicates that this job would be found only in isolated areas, *versus* several regions of the country").

On the other hand, some courts have found that evidence of jobs existing nationally is not sufficient to show jobs existing in several regions of the country and have found that remand is required to develop more specific evidence regarding the regional availability of jobs. *See Webb v. Berryhill*, 294 F. Supp. 3d 824, 904 (D.S.D. 2018) (remanding where the ALJ relied on vocational expert testimony about the number of merchandise marker and housekeeping cleaner jobs "in the United States"; stating, "While this court might hazard a guess that there are substantial numbers of housekeeping cleaning jobs available in South Dakota, . . . or in several other regions in the country, this court is not allowed to guess about facts that might have been able to have been adduced at the agency level. The failure of proof requires remand to the agency to further develop the facts at step five."); *Price v. Comm'r of Soc. Sec.* No. 1:16-CV-43-DAS, 2016 WL 7443793, at *2 & n.2 (N.D. Miss. Dec. 22, 2016) (remanding where the vocational expert testified that there were, nationally, 24,551 binding winder jobs in the textile industry, 21,421 sack repairer jobs in the feed industry, and 20,432 cuff folder jobs in the knitting industry, but admitted that the industries involving those jobs were not prevalent in Mississippi and provided no estimates of the number of jobs within the state or region).

This case presents a close call. However, on the specific facts presented, the Court is persuaded that the Commissioner has met her burden of showing jobs existing in "several regions of the country," as required by the statute. Plaintiff does not argue that the jobs identified by the vocational expert do not exist in several regions of the country, nor does anything in the *DOT* descriptions of the jobs suggest that they would be present only in one or a few regions of the country. A "school bus monitor," *DOT* No. 372.667-042, is someone who "monitors conduct of students on school bus to maintain discipline and safety." A "counter clerk," *DOT* No. 249.366-010, is someone who "receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment." The *DOT* number the vocational expert identified as "office clerk," *DOT* No. 205.367-030, is actually for "election clerk," and it refers to someone who "[c]ompiles and verifies voter lists from official registration records," in addition to performing other election-related duties. As a matter of common sense, the nature of these jobs is not such that they would be confined to one or a few regions of the United States. *See John D.C.*, 2018 WL 6018859, at *4-*5 (finding that an argument that jobs of cleaner, kitchen helper, and laundry worker "would be frivolous" because those jobs are not regional); *Brininger v. Berryhill*, No. 3:16-CV-00903, 2017 WL 3634187, at *14 (M.D. Pa. Aug. 7, 2017) ("[T]here is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist in only a few locations.") (quotation marks omitted), *report and recommendation adopte*d, No. 3:16CV903, 2017 WL 3632496 (M.D. Pa. Aug. 23, 2017). *Cf. Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir.1997) (noting, in the related context of determining whether job numbers are "significant" at Step Five, "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation") (internal quotation marks omitted).

Moreover, the number of jobs identified here—72,500—is similar to or greater than numbers from which courts have found it reasonable to infer that the jobs are available in several regions of the country. *See Gutierrez*, 740 F.3d at 529 ("[a] finding of 25,000 jobs likely does not fall into the category of "isolated jobs" existing in "very limited numbers"") (quoting 20 C.F.R. § 416.996(b)). *Brininger*, 2017 WL 3634187, at *15 (finding that 74,470 jobs was a number "large enough that it can reasonably be inferred that the jobs are not available only in isolated regions of the country"), *report and recommendation adopted,* 2017 WL 3632496.

In sum, the Court finds that in this case, substantial evidence supports the conclusion that there is work existing in "several regions of the country" that Plaintiff can perform. Although it would certainly be a better practice for the Commissioner to obtain specific evidence regarding the regional availability of jobs, the evidence obtained in this case was sufficient to satisfy the Commissioner's burden. Therefore, the Court will affirm the decision of the ALJ.

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of March, 2019.